[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Susannah Rochester, filed this negligence action against the defendants, Nicole Guth, Sarkis Desteoglu and Leaseway Transport Company (Leaseway Transport), on September 5, 2001. In her two count original complaint, the plaintiff alleged the following facts. On August 18, 1999, the plaintiff was a passenger in a 1996 Ford traveling north in the left lane of Interstate 95. While traveling in the right lane, Guth lost control of her 1989 Volkswagon and spun around in front of a vehicle operated by Guy Baril. In an effort to avoid hitting Guth, Baril slowed down and was hit by Desteoglu, who was operating a 1995 GMC tractor trailer owned by Leaseway Transport. Desteoglu struck Baril in the right lane, entered the left lane and collided with the plaintiffs vehicle. As a result of the collision, the plaintiff suffered multiple injuries. The plaintiff claims that the collision was a result of the negligence of Guth and Desteoglu.
Desteoglu and Leaseway Transport filed an apportionment complaint against Baril and Les Enterprises de Transport (Les Enterprises) on January 4, 2002. The apportionment complaint alleges the following facts. At the time of the incident, Leaseway Transport was an organized corporation that did business as a trucking company in Connecticut. Desteoglu, an agent, servant or employee of Leaseway Transport, operated a vehicle owned by Leaseway Transport. Baril, an agent, servant or employee of Les Enterprises, operated a 1995 Kenworth tractor trailer owned by Les Enterprises and registered in Quebec, Canada. Les Enterprises was an organized corporation doing business as a trucking company in Connecticut. Desteoglu and Leaseway Transport claim that they are entitled to apportionment of liability as to Les Enterprises because Baril negligently caused the plaintiffs injuries. The apportionment complaint was served on the commissioner of motor vehicles and mailed to Bail and Les Enterprises in Quebec. Thereafter, on January 23, 2002, the plaintiff amended her complaint to allege a third count in negligence CT Page 13095 against Bail and Les Enterprises.
Baril and Les Enterprises filed an appearance on February 5, 2002, along with a motion to dismiss the apportionment complaint. They argue that the court lacks personal jurisdiction over them due to insufficient service of the writ, summons and complaint. Service of process on a foreign defendant, they argue, is not governed by General Statutes §52-62, but by General Statutes § 52-59d (a), which provides for service of process outside the country in accordance with the Convention of the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638 (Hague Convention). Desteoglu and Leaseway Transport filed a memorandum in opposition to the motion to dismiss on February 22, 2002, and Baril and Les Enterprises filed a reply memorandum dated February 22, 2002.
 DISCUSSION
Pursuant to Practice Book § 10-30, "[a]ny defendant, wishing to contest the court's jurisdiction . . . must do so by filing a motion to dismiss within thirty days of the filing of an appearance." "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [complainant] cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). A motion to dismiss "shall be used to assert . . . lack of jurisdiction over the person . . . and insufficiency of service of process." Practice Book § 10-31. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624,461 A.2d 991 (1983). It admits all facts well pleaded; Barde v. Board ofTrustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988); and looks at the facts in the light most favorable to the plaintiff. Lawrence Brunoli, Inc. v.Branford, 247 Conn. 407, 410-11, 722 A.2d 271 (1999). "Facts showing the service of progress in time, form, and manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person." (Emphasis in original; internal quotation marks omitted.) Bridgeport v. Debek, 210 Conn. 175, 179-80, 554 A.2d 728
(1989).
Desteoglu and Leaseway Transport oppose the motion to dismiss, arguing that they properly served process under § 52-62. General Statutes § 52-62 states in relevant part:
" (a) Any nonresident of this state who causes a motor vehicle to be used or operated upon any public highway or elsewhere in this state shall CT Page 13096 be deemed to have appointed the Commissioner of Motor Vehicles as his attorney and to have agreed that any process in any civil action brought against him on account of any claim for damages resulting from the alleged negligence of the nonresident or his agent or servant in the use or operation of any motor vehicle upon any public highway or elsewhere in this state may be served upon the commissioner and shall have the same validity as if served upon the nonresident personally." Desteoglu's and Leaseway Transport's argument fails, however, because § 52-59d
supercedes § 52-62. See Bednarsky v. Rose Wreath Tree, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 379777 (July 27, 2001, Stevens, J.) (30 Conn.L.Rptr. 206, 207). General Statutes § 52-59d governs serving a foreign defendant and provides in relevant part: " (a) Notwithstanding any provision of the general statutes relating to service of process, civil process shall not be served outside of the United States of America in violation of any applicable treaty or convention, including without limitation, the Hague Convention on Service of Process Abroad." The Hague Convention, therefore, dictates the process for serving foreign defendants.
The Hague Convention "was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Volkswagenwerk Aktiengesellschaft v. Schlunk,486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. 20 U.S.T. 362, T.I.A.S. 6638, Art. 2. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. Art. 5. The central authority must then provide a certificate of service that conforms to a specified model." Id., 698-99.
Both the United States and Canada are signatories to the Hague Convention. As such, Article 2 applies to both countries. Article 2 states: "Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Article 3 to 6. Each state shall organise the Central Authority in conformity with its own law." In section 1 of the comment section, Canada established that "[t]o save time, requests should be forwarded directly to the Central Authority of the province or territory concerned. They may, however, also be forwarded to the Federal Central Authority which will transmit them to the relevant Central Authority." It then lists the information for the central authority in Quebec as "Ministre de la CT Page 13097 Justice du Quebec, a/s Le service juridique, address: 1200 route de l'Eglise, 5eme etage, Ste-Foy, Quebec, Canada GIV 4MI, telephone: (418) 643-1436."
Although Article 2 establishes a central authority where a complainant must send its request for service of process on a resident of that country, Article 10 (a) states: "Provided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Convention, supra, 20 U.S.T. at 363, T.I.A.S. at 6638. In section 2 A of the comment section, Canada accepted this provision, declaring that it "does not object to service by postal channels." See Bednarsky v. Rose Wreath Tree, supra,30 Conn.L.Rptr. 208.
Courts, however, are unclear about the meaning of Article 10 (a) and the word "send." "The federal courts are split on the interpretation of Article 10 (a). . . ." Cavendish-Pell v. Howell, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 145706 (December 16, 1995, Lewis, J.). "Some have determined that the word `send' was intended to be used synonymously with `service of process,' especially in light of the purpose of the Hague Convention which is to facilitate service abroad. Under that view, service of process by mail is allowable if the defendant's state has levied no objection to the Article. . . . Other courts have concluded that, because the word `service' is used elsewhere in parts (b) and (c) of the Article, the word `send' must have a different meaning from `service.' Those courts hold that Article 10 (a) allows the transmission of documents other than process. . . . Randolphv. Hendry, 50 F. Sup.2d 572, 576-77 (S.D.W. Va. 1999)." (Internal quotation marks omitted.) Bednarsky v. Rose Wreath Tree, supra,30 Conn.L.Rptr. 207.
"There is no appellate authority on this matter in Connecticut." Id. "[T]he judges of the Superior Court have consistently aligned themselves with the latter line of cases, which hold that Article 10 (a) merely provides a method for sending subsequent documents after service of process has been obtained." Id.; see, e.g., Johnson v. Pfizer, Inc., Superior Court, judicial district of New London at New London, Docket No. 118821 (March 16, 2000, Hurley, J.) (26 Conn.L.Rptr. 690, 693);Cavendish-Pell v. Howell, supra, Superior Court, Docket No. 145706.
This court, however, like the Bednarski court, need not align itself with either side of the Article 10 (a) issue. In this particular case, the state of destination, Canada, has consented to and authorized mail service in addition to service through its central authority. Because CT Page 13098 Canada does not object to service through the mail, "mail service under the Hague Convention is valid on a Canadian resident." Bednarsky v. RoseWreath Tree, supra, 30 Conn.L.Rptr. 208.
Desteoglu and Leaseway Transport served the apportionment complaint on the commissioner of motor vehicles and sent a copy by certified mail, return receipt requested, directly to Baril and Les Enterprises at their residences in Quebec. Since Canada allows its residents to be served through the mail, Desteoglu and Leaseway Transport sufficiently served process on Baril and Les Enterprises.
Accordingly, Baril's and Les Enterprises' motion to dismiss for lack of personal jurisdiction due to insufficient process is denied.
Martin, J. CT Page 13099